## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

SPANISH VILLA, LLC ET AL.          CIVIL ACTION

VERSUS          NO: 23-4258

CERTAIN UNDERWRITERS
AT LLOYD'S LONDON ET AL.          SECTION: "H"

### ORDER AND REASONS

Before the Court is Defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. 6). For the following reasons, the Motion is **GRANTED**.

### BACKGROUND

This case arises out of insurance contract disputes following Hurricane Ida. Plaintiffs Spanish Villa, LLC; French Village, LLC; Dorian, LLC; Super Awas, LLC; Le Jardin, LLC; Ye Old Rivers, LLC; and Abita Gardens Apts. ("Plaintiffs") allege that Defendants Certain Underwriters at Lloyd's, London ("Lloyd's"); Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; HDI Global Specialty SE; Old Republic Insurance Company; and GeoVera Specialty Insurance Company ("Defendants")

1

breached their insurance contract ("the Policy") with Plaintiffs,[1] breached their duties of good faith and fair dealing, and acted in bad faith in failing to provide coverage for damages sustained to Plaintiffs' properties during Hurricane Ida.

This case was initially filed in the 24th Judicial District Court for the Parish of Jefferson and then removed to this Court on August 25, 2023. Pursuant to the Eastern District's Hurricane Ida Case Management Orders, this case is subject to the Streamlined Settlement Program.[2] On October 17, 2023, Defendants were granted leave to opt out of the Streamlined Settlement Program, solely to the extent necessary to prosecute this Motion to Compel Arbitration.[3] Defendants have now moved to compel arbitration of this dispute pursuant to an arbitration agreement in the Policy. Plaintiffs oppose.[4]

## **LEGAL STANDARD**

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention") governs the recognition and enforcement of arbitration agreements between citizens of nations that are signatories to the convention.[5] The United States joined the New York Convention in 1970, with a goal to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are

---

[1] Plaintiffs allege that "Defendant Insurers collectively insured the [listed] rental properties for the Plaintiffs/Insureds for the policy period of January 5, 2021 – January 5, 2022, from a commercial policy of insurance issued through the Eagan Insurance Agency and Producer, CRC Group." Doc. 1-2 at 6. Each insurer had their own respective insurance policy, with differing policy numbers, with Plaintiffs. *See* Doc. 1-2 at 4–6 (listing the policy numbers).

[2] Doc. 4.

[3] Doc. 23.

[4] Doc. 18.

[5] *See* Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1144 (5th Cir. 1985).

enforced in the signatory countries."[6] The New York Convention is implemented by the Federal Arbitration Act (FAA), which provides for enforcement in United States courts.[7]

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry."[8] Courts "should compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen."[9] If these four requirements are met, "arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[10]

## LAW AND ANALYSIS

Defendants assert that the arbitration clause at issue is enforceable under the New York Convention and the FAA.[11] Plaintiffs respond that (1) the Inter-American Convention on International Commercial Arbitration and

---

[6] Authenment v. Ingram Barge Co., 878 F. Supp. 2d 672, 676 (E.D. La. 2012) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974)); Todd Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., 601 F.3d 329, 332 n.4 (5th Cir. 2010). Where applicable, the New York Convention supersedes state law. *See* McDonnel Grp., LLC v. Great Lakes Ins. Se., 923 F.3d 427, 431–32 (5th Cir. 2019); Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 366 (4th Cir. 2012).

[7] 9 U.S.C. §§ 201–208.

[8] Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 339 (5th Cir. 2004).

[9] Francisco v. Stolt Achievement MT, 293 F.3d 270, 273 (5th Cir. 2002) (citing *Sedco*, 767 F.2d at 1144–45).

[10] Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC, 379 F.3d 159, 166 (5th Cir. 2004). Thus, the Court must enforce the arbitration clause "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *Freudensprung*, 379 F.3d at 339 (citing *Sedco*, 767 F.2d at 1146).

[11] "Congress' implementing legislation for the Convention is found as part of the [Federal] Arbitration Act." *Sedco*, 767 F.2d at 1145 (citing 9 U.S.C. § 1 *et seq.*).

Non-Admitted and Reinsurance Reform Act of 2010 require denial of the motion to compel arbitration; (2) the New York Convention does not apply; (3) if the New York Convention applies, the McCarran-Ferguson Act (MFA) reverse-preempts the New York Convention such that Louisiana law on insurance governs; and (4) even if the New York Convention governs, the domestic insurers cannot be compelled to arbitrate. The Court addresses each argument in turn.

### 1. Convention on the Recognition and Enforcement of Foreign Arbitral Awards

The Court finds that all four requirements of the New York Convention are met. The arbitration provision at issue provides in relevant part that:

> All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.[12]

First, there is a written agreement to arbitrate the dispute contained in the Policy. Second, the provision provides for arbitration in New York, which is within a signatory country.[13] Third, the insurance agreement arises out of a commercial legal relationship—a commercial insurance policy—between Plaintiffs and Defendants.[14] And fourth, Defendants allege that two of the defendants, Lloyd's and HDI Global Specialty SE are citizens of the United

---

[12] Doc. 1 at 3.

[13] *Freudensprung*, 379 F.3d at 339.

[14] *See Francisco*, 293 F.3d at 273; 9 U.S.C. § 202 (defining a "commercial legal relationship" as "including a transaction, contract, or agreement described in section 2 of [Title 9]," which includes "a contract evidencing a transaction involving commerce"); Harvey v. Certain Underwriters at Lloyd's, London, No. 22-4049, 2023 WL 4485083 (E.D. La. June 6, 2023).

Kingdom and Germany, respectively.[15] Finally, Plaintiffs' breach of contract, breach of the duty of good faith and fair dealing, and bad faith damages claims fall squarely within the scope of the Policy's arbitration agreement.[16] Accordingly, this Court finds that all requirements are met and that the arbitration agreement falls under the New York Convention.[17]

Plaintiffs, however, argue that the agreement is null and void or incapable of being performed, thereby precluding this Court from ordering arbitration. "The Convention's 'null and void' clause limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses."[18] Given the signatories' "joint policy that

---

[15] Defendant HDI Global Specialty SE ("HDI") asserts that it is incorporated under the laws of Germany and has its principal place of business in Germany. Thus, HDI is a citizen of Germany. *See* 28 U.S.C. § 1332(c). Accordingly, the requirement that "*a party* to the agreement is not an American citizen" is met. *See Francisco*, 293 F.3d at 273. Plaintiffs make a half-hearted argument that "Defendants have failed to even make a threshold allegation much less a showing that the Convention applies." Doc. 18 at 23 n.2. However, Defendants specifically allege that HDI is domiciled in and has its principal place of business in Germany. *See* Doc. 6-1 at 9; *see also* Doc. 1 at 7, 10. Accordingly, Plaintiffs' argument fails. *See* 1010 Common, LLC v. Certain Underwriters at Lloyd's, London, No 20-2326, 2020 WL 7342752, at *5 (E.D. La. Dec. 14, 2020).

[16] *See Sedco*, 767 F.2d at 1145 (quoting Commerce Park of DFW Freeport v. Mardian Constr. Co., 729 F.2d 334, 338 (5th Cir. 1984)) ("Additionally, when confronted with arbitration agreements, we presume that arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue . . . .'"). *See also* Woodward Design + Build, LLC v. Certain Underwriters at Lloyd's London, No. 19-14017, 2020 WL 5793715, at *3 (E.D. La. Sept. 29, 2020) (quoting Beiser v. Weyler, 284 F.3d 665, 669 (5th Cir. 2002)) ("Plaintiffs' bad faith claims, however, are sufficiently 'related to' the claims that are governed by the Arbitration Clause. The Fifth Circuit has explained that 'whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.'").

[17] *Iberia Credit Bureau*, 379 F.3d at 166. Because the Court finds that the New York Convention applies, the Court need not consider the parties' alternative arguments as to the applicability of the FAA generally.

[18] Evergreen Assoc., Inc. Evergreen Lions Club v. Indep. Spec. Ins. Co., No. 23-1689, 2023 WL 5333188, at *4 (E.D. La. Aug. 18, 2023) (citing Simon v. Princess Cruise Lines, Ltd., No. G-13-0444, 2014 WL 12617820, at *3 (S.D. Tex. May 19, 2004)). *See also*

presumes the enforceability of agreements to arbitrate," "[t]he limited scope of the Convention's 'null and void' clause must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.'"[19]

Plaintiffs argue that the agreement is null and void because the arbitration clause is unconscionable, adhesionary, and was included in the Policy without Plaintiffs' knowledge or consent. Plaintiffs, as the parties opposing arbitration, bear the burden of proving their contractual defenses.[20] "[T]he federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."[21]

### A. Unconscionable and Adhesionary

Plaintiffs argue that "[i]t would be unconscionable to require Louisiana plaintiffs who can't even afford to fix their properties to be expected to have the resources" to arbitrate in New York. Under Louisiana law, however, inconvenience alone is insufficient to invalidate a contract where the "weaker party" may have had the ability to negotiate the terms of the contract or utilize another service provider.[22] This argument therefore fails.

Plaintiffs next argue that the agreement is unconscionable because "it excludes the provision of penalties and attorney's fees [under] LSA-R.S.

---

*Fraudensprung*, 379 F.3d at 341 (holding that an arbitration agreement must be enforced unless the opposing party "allege[s] and prove[s] that the arbitration clause itself was a product of fraud, coercion, or 'such grounds as exist in law or in equity for the revocation of the contract'" (alteration in original)); Nat'l Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326, 332 (5th Cir. 1987).

[19] *Id.* (citing *Simon*, 2014 WL 12617820, at *3; Bautista v. Star Cruises, 396 F.3d 1289, 1302 (11th Cir. 2005)).

[20] *See Freudensprung*, 379 F.3d at 342.

[21] Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 538 (5th Cir. 2003) (quoting Fleetwood Enters. Inc. v. Gaskamp, 280 F.3d 1069, 1073–74 (5th Cir. 2002)).

[22] *See* Hoffman, Siegel, Seydel, Bienvenu & Centola, ALPC v. Lee, 936 So. 2d 853, 859 (La. App. 4th Cir. 2006).

22:1892 & 22:1793 for insurers' [sic] failure to timely perform under contract."[23] Various sections of this Court have considered similar arguments and found them "far too speculative."[24] This Court agrees. "It is unclear that La. R.S. § 22:1892 and § 22:1973 are even implicated in this case because it is unclear whether any of the conditions which trigger bad faith or consequential loss damages . . . are present."[25] Accordingly, this Court declines "to hold that the speculative possibility of the availability of bad faith or consequential loss damages under Louisiana law"[26] renders the arbitration agreement unconscionable.

Lastly, Plaintiffs argue that the arbitration clause's physical characteristics, distinguished features, and mutuality, in addition to the parties' relative bargaining strengths renders the agreement adhesionary and therefore null and void. Louisiana courts generally consider the following factors in determining whether a contract of adhesion exists:

> (1) the physical characteristics of the arbitration clause, including font size; (2) the distinguished features of the arbitration clause; (3) the mutuality of the arbitration clause, in terms of the relative burdens and advantages conferred by the clause upon each party; and (4) the relative bargaining strength of the parties.[27]

---

[23] Doc. 18 at 17.

[24] *See* Academy of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London, 651 F. Supp. 3d 822, 830 (E.D. La. 2023) (Africk, J.); Certain Underwriters at Lloyd's, London et al. v. Belmont Commons L.L.C. D/B/A 925 Common et al., No. 22-3874, 2023 WL 105337, at *3 (E.D. La. Jan. 4, 2023) (Fallon, J.); Evergreen Assoc., Inc. Evergreen Lions Club v. Indep. Spec. Ins. Co., No. 23-1689, 2023 WL 5333188, at *6 (E.D. La. Aug. 18, 2023) (Morgan, J.); Olsen Sec. Corp. v. Certain Underwriters at Lloyd's London, No. 22-3120, 2023 WL 405437, at *6 (E.D. La. Jan. 25, 2023) (Brown, C.J.); Ten G, LLC v. Certain Underwriters at Lloyd's London, No. 22-4426, 2023 WL 4744170, at *6–7 (E.D. La. July 25, 2023) (Vitter, J.).

[25] *Belmont Commons*, 2023 WL 105337, at *3.

[26] *Id.*

[27] Stor-All Gentilly Woods, LLC v. Indian Harbor Ins. Co., No. 23-334, 2023 WL 2585982, at *2 (E.D. La. Mar. 21, 2023) (quoting Georgetown Home Owners Ass'n, Inc. v. Certain

The arbitration clause at issue here is written in the same text as other provisions of the Policy and is preceded by a title in all caps: "ARBITRATION CLAUSE." The clause also falls under a Section entitled "CONDITIONS," which is bolded. Moreover, the clause applies equally to both parties, as it requires arbitration of "[a]ll matters in difference between the Insured and the Companies."[28] While Plaintiffs argue that they "did not even have the opportunity to review the policy provisions before they apparently assented to all 129 pages of their terms," they also state that they "secured the policy from an agent" and provide no further explanation as to why they did not have the opportunity to review the Policy.[29] Regardless, "[i]t is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."[30] Considering these factors, the Court finds that Plaintiffs have not carried their burden in demonstrating that the agreement is adhesionary or unconscionable.

### B. Lack of Knowledge or Consent

Plaintiffs next argue that the agreement is null and void because the arbitration provision was included by Defendants without Plaintiffs' knowledge or consent.[31] Generally, ignorance as to the terms of an agreement is not a contractual defense.[32] Such ignorance, however, "may form a basis of nullity if it was induced by the other party."[33] "Inducement may be found if the

---

Underwriters at Lloyd's London, No. 20-102-JWD-SDJ, 2023 WL 359735, at *15 (M.D. La. Feb. 2, 2021)) (internal quotation marks omitted).

[28] Doc. 1 at 3.

[29] Doc. 18 at 20.

[30] Aguillard v. Auction Mgmt. Corp., 908 So. 2d 1, 17 (La. 2005); *Georgetown Home Owners Ass'n*, 2021 WL 359735, at *13.

[31] Doc. 18 at 17.

[32] Baricuatro v. Indus. Personnel & Mgmt. Servs., Inc., 927 F. Supp. 2d 348, 369 (E.D. La. 2013) (citing Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 538 (5th Cir. 2003)).

[33] *Baricuatro*, 927 F. Supp. 2d at 369 (citing *Am. Heritage Life Ins. Co.*, 321 F.3d at 538).

party misrepresented facts, acted in less than good faith, or had notice of the other party's ignorance."[34] Here, Plaintiffs make no argument that Defendants misrepresented facts, acted in less than good faith, or had notice of Plaintiffs' ignorance. Accordingly, Plaintiffs' argument as to lack of knowledge or consent fails.

### C. Public Policy

Plaintiffs argue that "recognition or enforcement of the award would be contrary to public policy," including the "public policy of [the United States] to continue the regulation and taxation of the insurance industry by the states."[35] In support of this argument, Plaintiffs cite Article V of the New York Convention, which governs recognition or enforcement of arbitral awards, not enforcement of arbitration agreements themselves. Moreover, "Article II contains no explicit or implicit public-policy defense at the initial arbitration-enforcement stage."[36] Plaintiffs' public policy arguments are therefore improperly raised at this stage.

### D. Ambiguous

Lastly, Plaintiffs argue that conflicting endorsements to the Policy render the agreement ambiguous, and this ambiguity must be construed in Plaintiffs' favor.[37] Plaintiffs cite various provisions, all of which are "service of suit" clauses.[38] Plaintiffs argue that these provisions change the terms of the policy and negate the arbitration clause altogether. In *Academy of Sacred*

---

[34] *Id.* (citing *Am. Heritage Life Ins. Co.*, 321 F.3d at 538).

[35] Doc. 18 at 9; *id.* at 15–16. Plaintiff also avers that "it remains to be seen how it would not be a clear violation of public policy to require a property owner who is entitled to damages for an insurer's (sic) refusal to comply with contractual terms (sic) to be subject to the laws of a different state in front of an insurance industry panel [that] deems the arbitration provision preempted by Louisiana law." Doc. 18 at 16.

[36] Escobar v. Celebration Cruise Operator, Inc., 805 F.3d 1279, 1287 (11th Cir. 2015).

[37] Doc. 18 at 21–22.

[38] *See* Doc. 5-2 at 90 (Louisiana Service of Process Clause); *id.* at 95 (Service of Suit and In Witness Clause); *id.* at 102 (Service of Suit Clause(s)).

*Heart of New Orleans v. Certain Underwriters at Lloyd's London*, Judge Lance Africk squarely addressed this issue and held that the service of suit clauses did not change the terms of the Policy or otherwise render the agreement invalid:

> The Fifth Circuit rejected a similar argument in *McDermott International, Inc. v. Lloyds Underwriters of London*. In that case, the court held that a service of suit clause similar to that at issue here "could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award. Since *McDermott*, courts have consistently held that endorsements and service of suit clauses like those in [the Insured's] policy do not nullify otherwise valid arbitration agreements.[39]

This Court finds the foregoing analysis compelling, and Plaintiffs have not presented any persuasive argument to the contrary. Because Plaintiffs have not carried their burden in showing that the arbitration agreement at issue is null and void, the New York Convention applies.

## 2. *Inter-American Convention on International Commercial Arbitration and Non-Admitted and Reinsurance Reform Act of 2010*

Plaintiffs next assert that the Inter-American Convention on International Commercial Arbitration ("Panama Convention") applies rather than the New York Convention. Plaintiffs argue that in cases such as this, where the New York Convention and Panama Convention govern, courts should apply the Panama Convention where a majority of defendants are

---

[39] *Acad. of Sacred Heart of New Orleans*, 651 F. Supp. 3d at 830 (citing McDermott Int'l v. Lloyds Underwriters of London, 944 F.2d 1199 (5th Cir. 1991); Tra-Dor, Inc. v. Underwriters at Lloyds London, No. 21-02997, 2922 WL 3148980, at *4 (W.D. La. July 25, 2022); Woodward Design + Build, LLC v. Certain Underwriters at Lloyd's London. No. 19 14017, 2020 WL 5793715, at *3 (E.D. La. Sept. 29, 2020); Sw. LTC-Mgmt. Servs. LLC v. Lexington Ins. Co., No. 18-491, 2019 WL 1715832, at *5 (E.D. Tex. Mar. 29, 2019)).

citizens of the United States.[40] Plaintiffs, however, skip the preliminary inquiry of whether the requirements for application of the Panama Convention have been met. On January 25, 2024, this Court ordered supplemental briefing on the issue of whether the Panama Convention applies to this arbitration agreement. Defendants filed supplemental briefing, arguing that the Panama Convention does not apply in this case because all parties to the agreement are not citizens of nations that are signatories to the Panama Convention. Plaintiff, however, failed to file any such briefing.

The goal of the Panama Convention was to "address[] the growing need for a measure of consistency and uniformity in the recognition and enforcement of arbitral awards in Latin America . . . ."[41] Thus, for the Panama Convention to apply, courts have required that *all* parties to an arbitration agreement be citizens of Panama Convention signatories.[42] The United Kingdom and Germany are not signatories to the Panama Convention.[43] Because Defendants Lloyd's and HDI Global Specialty SE are citizens of the United Kingdom and Germany, respectively, the Court finds that Panama Convention does not apply.

Alternatively, Plaintiffs argue that the Non-Admitted and Reinsurance Reform Act of 2010 ("NRRA") applies because the NRRA "assigns regulatory

---

[40] The Panama Convention's implementing legislation provides that when the requirements for application of both conventions are met, the Panama Convention shall apply if a majority of the parties to the arbitration agreement are citizens of States that have ratified or acceded to the Panama Convention. 9 U.S.C. § 305.

[41] John P. Bowman, *The Panama Convention and its Implementation Under the Federal Arbitration Act*, 11 AM. REV. INT'L ARB. 1, 20 (2000).

[42] *See, e.g.*, Earth Sci. Tech, Inc. v. Impact UA, Inc., 809 F. App'x 600, 605 (11th Cir. 2020) ("[The parties] are citizens of El Salvador and the United States, respectively. And both of those countries are parties to the Panama convention. So the Panama Convention governs the arbitration at issue here.").

[43] *See* Inter-American Convention on International Commercial Arbitration, Oct. 23, 1986, 1438 U.N.T.S. 249.

and premium tax jurisdiction to the home state of the insured."[44] The Court finds Plaintiffs' conclusion to be thinly reasoned and unpersuasive. The relevant portions of the NRRA cited by Plaintiffs provide that "the *placement* of non-admitted insurance shall be subject to the statutory and regulatory requirements solely of the insured's home State"[45] and that "[n]o State other than the home state of an insured may require any premium tax payment for nonadmitted insurance."[46] These provisions, however, relate to the placement (i.e., the sale or renewal) of insurance and to premium tax payments for nonadmitted insurance. These statutory provisions are wholly unrelated to the inclusion of arbitration provisions in insurance contracts and fail to wholesale "assign[] regulatory and premium tax jurisdiction to the home state of the insured," as argued by Plaintiffs.[47]

### 3. *Equitable Estoppel*

Having concluded that the New York Convention requires this Court to compel arbitration, Plaintiffs wish to dismiss the foreign insurers since each defendant-insurer issued a separate contract of insurance to Plaintiffs. Because several of the insurers are domestic entities, and the New York Convention only applies to foreign insurers, Plaintiffs therefore argue that the domestic insurers lack a basis to compel arbitration. Defendants argue, however, that Plaintiffs should be equitably estopped from objecting to arbitration against domestic insurers.

The Fifth Circuit has held that "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause

---

[44] Doc. 18 at 8.

[45] 15 U.S.C. § 8202(a).

[46] *Id.* § 8201(a).

[47] Moreover, Plaintiffs fail to cite any case supporting their conclusion that the NRRA wholesale vests an insured's home state with exclusive jurisdiction over issues of insurance regulation.

raises allegations of substantially interdependent and concerted misconduct by both nonsignator[ies] and one or more of the signatories to the contract. Otherwise[,] the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."[48] Presented with similar facts and contractual language, other sections of this court have held that application of equitable estoppel is appropriate in the context of insurance contracts whereby a domestic insurer seeks to avoid arbitration pursuant to the New York Convention.[49]

Here, this Court finds that application of equitable estoppel is warranted. While the Policy provides that Plaintiffs have separate contracts with each of the defendants, Plaintiffs plainly allege that there is one policy agreement between Plaintiffs and Defendants.[50] "Although the insurance policy states that plaintiffs have separate contracts with each insurer, there is one insurance policy document that sets forth the terms and conditions on coverage on the risk. The operative policy language is identical as to all of the insurers, foreign and domestic."[51] Further, in their state court petition, Plaintiffs allege that they "initiated a claim with Defendant Insurers for wind

---

[48] *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (emphasis omitted). *See also* GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, 140 S. Ct. 1637, 1645 (2020).

[49] *See, e.g.*, Academy of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London, 651 F. Supp. 3d 822 (E.D. La. 2023) (Africk, J.); Par. of St. Charles v. HDI Global Specialty SE, No. 22-3404, 2023 WL 1419937 (E.D. La. Jan. 31, 2023) (Ashe, J.); MWH Mini Storage, LLC v. Underwriters at Lloyd's London, No. 22-2760, 2023 WL 2436681 (E.D. La. Feb. 6, 2023) (Guidry, J.); Kronlage Family Ltd. Partnership v. Indep. Specialty Ins. Co., 651 F. Supp. 3d 832 (E.D. La. 2023) (Brown, C.J.).

[50] Doc. 1-2 at 6 ("The Defendant Insurers collectively insured the following rental properties for the Plaintiffs/Insureds . . . from a commercial policy of insurance issued though the Eagan Insurance Agency and Producer . . . .").

[51] Port Cargo Servs., LLC v. Certain Underwriters at Lloyd's London, No. 18-6192, 2018 WL 4042874, at *7 (E.D. La. Aug. 24, 2018). *See* Doc. 1-2.

damage,"[52] that "Defendant Insurers submitted deficient and/or untimely payments for Building Coverage and Business Loss,"[53] that "Plaintiff[s] submitted Proofs of Loss to the Defendant Insurers,"[54] that "payments tendered by Defendant Insurers were deficient and/or untimely,"[55] and "Defendant Insurers' willful failure to tender full and/or undisputed payment . . . was arbitrary, deficient, untimely, and in bad faith."[56] Because Plaintiffs fail to differentiate between the purported wrongdoings of each defendant, this Court finds that Plaintiff has charged Defendants with interdependent and concerted misconduct.[57] Accordingly, application of equitable estoppel is warranted in this case.

### 4. *Reverse Preemption*

Plaintiffs argue that the McCarran-Ferguson Act (MFA) reverse-preempts the New York Convention so that Louisiana insurance law governs. The MFA provides, in pertinent part, that "[n]o Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any state for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance."[58] While federal law ordinarily preempts conflicting state law, the MFA "reverses that effect in the narrow range of cases involving state regulation of the insurance industry."[59] The Fifth

---

[52] Doc. 1-2 at 7.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *See* Holts v. TNT Cable Contractors, Inc., No. 19-13546, 2020 WL 1046337, at *4 (E.D. La. Mar. 4, 2020) (holding that a plaintiff alleges interdependent claims by "failing to differentiate between the wrongdoing by each defendant").

[58] 15 U.S.C. § 1012(b).

[59] Munich Am. Reinsurance Co. v. Crawford, 141 F.3d 585, 590 (5th Cir. 1998).

Circuit has held, however, that the MFA does not apply to insurance contracts subject to the New York Convention.[60] Therefore, Plaintiffs' argument fails.

### 5. *Stay Pending Arbitration*

In their Motion, Defendants request that this Court stay this matter pending arbitration. The provisions of the FAA apply to actions governed by the New York Convention.[61] Under the FAA, when a court is presented with a dispute subject to an arbitration clause, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[62] Because this Court finds that arbitration is required pursuant to the New York Convention, the case must be stayed pending arbitration pursuant to the Policy.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion is **GRANTED**. The parties are compelled to arbitrate this dispute in compliance with the terms of the Policy. **IT IS ORDERED** that the matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending resolution of the arbitration proceedings.

New Orleans, Louisiana this 1st day of April, 2024.

---

[60] Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London, 587 F.3d 714, 718 (5th Cir. 2009).

[61] 9 U.S.C. § 208; *1010 Common, LLC*, 2020 WL 7342752, at *12.

[62] 9 U.S.C. § 3; Todd v. Steamship Mut. Underwriting Ass'n, Ltd., No. 08-1195, 2011 WL 1226464, at *2 (E.D. La. Mar. 28, 2011).

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**